IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 8, 2002 Session

## THE CITY OF OAK HILL v. AAMP, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 00-807-II     Carol McCoy, Chancellor**

_____

**No. M2001-00688-COA-R3-CV - Filed December 11, 2002**

_____

This appeal concerns the City of Oak Hill's efforts to enforce its exclusively residential zoning restrictions over a parcel of land situated at the city's eastern border. The city appeals the trial court's finding that "parcel 109" was located outside of Oak Hill's city boundary and, therefore, not subject to the city's zoning ordinances. We affirm the action of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., and DON R. ASH, SP. J., joined.

Douglas Berry, Nashville, Tennessee, for the appellant, The City of Oak Hill.

Karl F. Dean, Philip D. Baltz and John L. Kennedy, Nashville, Tennessee, for the appellee, The Metropolitan Government of Nashville and Davidson County.

**OPINION**

On March 7, 2000, AAMP, LLC and Mark Marshall began the grading and construction for a fruit and flower stand on a piece of real property sixty feet by two hundred feet, fronting a section of Franklin Pike near that road's intersection with Old Hickory Boulevard. As a direct result of AAMP's commencement of construction, the City of Oak Hill, on March 14, 2000, filed an application in Davidson County Chancery Court seeking a temporary restraining order and permanent injunction against further construction on that property. As grounds, the city alleged that its exclusively residential zoning restrictions prohibited commercial construction on the site, and that AAMP had violated the municipal ordinances of Oak Hill by commencing construction without the required building permits issued by the city.

On March 14, 2000, the trial court issued a temporary restraining order based upon Oak Hill's application, enjoining AAMP, LLC, and Mark Marshall from doing or performing "any further grading, filling, stripping, excavation, or other disturbance to the natural ground, or work of any kind

for which a building permit is required under the ordinances of the City of Oak Hill, on or within the property known as the AAMP, LLC subdivision, final plat dated July 7, 1997, and as approved by the City of Oak Hill on July 17, 1997, without first having obtained a valid, building permit from the city."[1]

After the issuance of the temporary injunction, the City of Oak Hill filed the supplemental affidavit of Barnett Williams and the affidavit of Roger Fuqua. In his affidavit, Mr. Fuqua opined, in part: "In my opinion, Parcel 109, although excess land owned at one time by the State of Tennessee Department of Transportation, was never considered by the state to be a part of the right-of-way of Franklin Pike, but lies entirely to the west of this right-of-way and thus within the City of Oak Hill." For its part, AAMP, LLC responded attaching, *inter alia*, the affidavit of Lon West, who opined that the parcel as described in Mr. Fuqua's affidavit was actually within the municipal boundaries of the Metropolitan Government of Nashville and Davidson County. The trial court subsequently modified its temporary restraining order pending a full hearing to be held on November 29, 2000. After a full hearing, in which the court heard from both Mr. Roger Fuqua and Mr. Lon West, in addition to Freddy Stroupe and Roger Payne, the court specifically found that the subject parcel was outside the jurisdiction of the City of Oak Hill and not subject to the city's zoning restrictions. Fuqua gave one opinion as to the location and description of Oak Hill's boundary, while West, Stroupe and Payne gave differing opinions. The court specifically relied upon the opinions of Stroupe and Payne.

The city argues that the court's construction of the Petition for Incorporation is incorrect as a matter of law, in that it fails to presume that the members of Oak Hill in their petition intended to take as within the boundary of the City of Oak Hill property including the center line of Franklin Pike. In determining the intent of the petition, the court looked to all of the surrounding circumstances, including the several maps stipulated by the parties below and the testimony of the experts. Of particular significance in the trial court's inquiry are the following findings of fact.

1. The central part of this litigation is a determination as to whether a small triangular piece of land referred to as Parcel 109 is within the jurisdiction of the City of Oak Hill, or is within the jurisdiction of the Metropolitan Government of Nashville.

2. In 1928, the Interurban Railroad owned Parcel 109 and in 1929, the Railroad quitclaimed to the Tennessee Department of Transportation the right of way for certain real property, including Parcel 109.

3. The Tennessee Department of Transportation did not record this quitclaim deed until 1977. During the time period between 1929 and 1977, the State of Tennessee used portions of the quitclaimed property to widen Franklin Pike.

4. In 1952, the City of Oak Hill was chartered as a municipal corporation and as part of its corporation, Oak Hill sought to preserve its residential character and

---

[1]     The disputed parcel 109 was originally included in the final plat indicated in the restraining order. Inasmuch as this appeal concerns only parcel 109, the remaining provisions of the injunction are not related herein.

adopted certain zoning which permitted only residential use of property within the city limits of Oak Hill. This zoning plan map reflects a triangular notch along Franklin Pike and specifically excludes this notch from the city limits of Oak Hill.

5.      At the time of the incorporation, the City of Oak Hill also adopted a major street plan which also reflects a specific triangular notch outside the city limits of Oak Hill.

6.      Oak Hill recorded the major street plan in the Register's Office for Davison County, Tennessee, and this documents stays of record as of the date of this hearing.

7.      On April 1, 1963, Nashville and Davidson County consolidated their government, and the City of Oak Hill, located within the boundaries of the newly consolidated Metropolitan Government, continued as an independently governing satellite city operating within the geographical boundaries of Nashville.

8.      By 1960, the Interurban Railroad no longer existed. During the 1960's, the Metropolitan Tax Assessor decided to declare land previously owned by the then defunct Interurban Railroad would belong to property owners adjacent to the Railroad's real property. Some of the adjacent property owners knew that the Tax Assessor was assigning them ownership in such real estate and some did not. Since the quitclaim deed to Parcel 109 had not been put to record by the State, the adjacent property owners to Parcel 109 appeared to have an ownership interest in Parcel 109 by the actions of the Metropolitan Tax Assessor.

. . . .

11.      On December 6, 1996, Mr. Lon F. West, Metro Zoning Administrator, wrote Mr. Summar and stated that Parcel 109 was zoned for commercial use and further that Parcel 109 was within the jurisdiction of the Metropolitan Government of Nashville and not within the jurisdiction of Oak Hill. In reaching this conclusion, Mr. West examined a number of documents including a 1944 City and County Planning Map (Exhibit 29) which indicated that the triangular notch as indicated on Franklin Pike was part of the State right of way.

. . . .

22.      The primary issue before this Court is whether Parcel 109 is properly within the city limits of Oak Hill or within the city limits of the Metropolitan Government of Nashville. A careful and thorough review of the maps introduced into evidence revealed some maps reflecting Parcel 109 within the city limits of Oak Hill, and some maps with Parcel 109 within the Metropolitan Government of Nashville.

23.      The Charter for the metropolitan Government of Nashville and Davidson County, Section 1.01 states, in part, that the governmental and corporate functions now vested in the City of Nashville, a municipality, are hereby consolidated with the government and corporate functions of the County of Davidson. Such consolidation was pursuant to the constitutional power granted by the Tennessee Constitution and T.C.A. 7-1-108. Said consolidation resulted in the creation and

establishment of a new Metropolitan Government of Nashville and Davidson County, Tennessee.

24. Metro Code, Section 1.02, states that the territory embraced in the Metropolitan Government shall be the total area of Davidson County as the same may be based and established upon the effective date of its charter, which was April 1, 1963. The Charter of the Metropolitan Government, Section 18.15, states that any city in Davidson County not abolished by this Charter shall continue to exist and function the same as prior to adoption of this Charter, except that no such city shall extend its boundaries by annexation of any area of the Metropolitan Government. Therefore, the boundaries of Oak Hill, as set forth in its Charter, could not be extended.

25. Tennessee Code Annotated 7-1-106 addresses excluded smaller cities and Section 18.15 of the Metropolitan Charter follows this same provision. Tennessee Code Annotated 6-51-302 allows municipalities to adjust their common boundaries by contract between themselves, so as to avoid confusion and uncertainty about the location of the contiguous, or to form a contiguous boundary to existing right of way.

26. The City of Oak Hill recorded maps at the time of its incorporation which reflected that Parcel 109 is outside the city limits of Oak Hill. Tennessee Department of Transportation held title to that notch which appears to be Parcel 109, from 1929 to 1979. Oak Hill did not include Parcel 109 within its city limits when it incorporated in 1952, and was unable to do so since the property belonged to the State of Tennessee and was outside the incorporated limits of the City of Oak Hill.

27. The State of Tennessee acquired Parcel 109 for right of way, and during the time the State owned Parcel 109, it was designated by the State for use as right of way. Parcel 109 was owned and used by the State for right of way purposes until the State of Tennessee quitclaimed its interest in Parcel 109 to Mr. Summar in 1978.

28. The Court heard testimony from various individuals who gave opinions as to the importance of the maps that were introduced into evidence, but the Court gave the most significant weight and credibility to the testimony of Freddie Stroupe and Lon West of the Metropolitan Government, and to a lesser degree, the testimony of Mr. Payne of the Tennessee Department of Transportation.

29. The City of Oak Hill did not include Parcel 109 within its jurisdiction when it incorporated in 1952. The City of Oak Hill could not acquire Parcel 109 within its city limits and jurisdiction through a new zoning map done in 1988 without a written agreement with Metro, nor could it acquire jurisdiction of Parcel 109 within its city limits by approval of Mr. Marshall's subdivision plat which erroneously included Parcel 109.

These findings of fact come to the Court accompanied by a presumption of correctness, and this Court finds that the evidence does not preponderate against those findings. T.R.A.P. 13(d).

Appellant raises four issues with the ultimate finding of the trial court. First, the city urges that the trial court erred in its conclusion that parcel 109 was outside of Oak Hill's boundary. Second, Appellant urges that the trial court erred in holding that Oak Hill could not have legally included property owned by the Tennessee Department of Transportation within its city limit. Third, the trial court erred in applying Tennessee Code Annotated section 6-51-302 and fourth, that the trial court erred in holding that Oak Hill could not extend its boundaries.

Oak Hill's petition for election to incorporate, as filed with the Davidson County Election Board, describes the boundaries of the territory to be incorporated as the City of Oak Hill:

> Beginning in the southerly margin of Thompson Lane where same intersects Franklin Pike, said beginning point being the northwest corner of the north line of the Liggett property easterly to a point in the westerly margin of the right-of-way of the main line of the Louisville and Nashville Railway; thence southwardly along the west margin of the right-of-way line to a point in the intersection of said right-of-way and Old Franklin Pike, being the northwest corner of said intersection and at the junction of the overpass of said Old Franklin Pike over said railroad right-of-way; thence westwardly from said point across the Franklin Pike to a point in the southwest corner of intersection of Redwood Drive and Franklin Pike; thence southerly along the west margin of Franklin Pike to a point in said margin 250 feet north of the northwest intersection of said Franklin Pike and Old Hickory Boulevard; thence at right angles westwardly 150 feet; thence southwardly and parallel with Franklin Road to the northerly margin of Old Hickory Boulevard; thence with the north margin of Old Hickory Boulevard westwardly to a point in the north margin of said Boulevard 5280 feet from the northwest corner of the intersection of the Franklin Pike and Old Hickory Boulevard; . . .

The trial court, therefore, was faced with a petition that used the word "margin" interchangeably with "right-of-way."

Every one of these issues involves the location of the easterly boundary of the City of Oak Hill. Along these lines this Court finds the following instructive, "Generally speaking the determination as to whether or not boundaries exist, and what they are is a matter of law for the court. Their location is a matter of fact for the determination of the trier of facts." Dennis Jensen, *McQuillin Municipal Corporations*, § 7.05 (3d ed. 1996) (footnote omitted).

Our Supreme Court has expanded upon this general statement, holding that "We of the courts determine what are the corporate limits already established and we determine by our inquiry whether or not these boundaries as attempted to be established by the municipal power comply with the law. We have no authority to act for the municipal body in its legislative capacity." *City of Johnson City v. State, ex rel. John Maden, et al.*; 202 Tenn. 318, 327, 304 S.W.2d 317, 322 (1957).

The city's first argument on appeal concerns the determination of the existence and description of the city boundaries. "When a deed calls for a boundary along a street it is generally held that where it appears clearly from the whole instrument, in conjunction with the surrounding circumstances, that the grantor intended to reserve the fee in the street, such intent will be given effect; when it does not so appear, it will be presumed that the grantee takes to the middle of the street. *City of Nashville v. Lawrence*, (1925) 153 Tenn. 606, 284 S.W. 882. *See also, Vanderbilt University v. Williams* (1925) 152 Tenn. 664, 280 S.W. 689; *Reeves & Co. v. Allen*, (1898) 101 Tenn. 412, 47 S.W. 495." *Patrick v. Curtis Person Inv., Inc.*, 603 S.W.2d 148, 150 (Tenn. Ct. App. 1980).

Appellant would urge the adoption of the center line doctrine to extend the boundary of Oak Hill into the middle of Franklin Pike. It is well to note at this point that, since as this Court is reviewing a question of law, no presumption of correctness attaches to those findings. *See Tennessee Farmers Mutual Ins. Co. v. American Mutual Liability Ins. Co.*, 840 S.W.2d 933, at 936 (Tenn. Ct. App. 1992).

When applied to deeds and conveyances the center line presumption requires two predicate determinations. The first involves the call of the deed. The deed must call for a description bounded by or along the side of a street. The second predicate determination is that the conveyor of the real property so bounded have title to the property conveyed. In other words, a grantor could not convey property to the center line of a street without first having title to that street. In reviewing the call of the petition, this Court notes first the ambiguous use of the word margin, second, the particular monument noted in the petition, and third, the actual course of the eastern boundary of Oak Hill. The resultant ambiguity in the description when viewed in light of the contemporaneous maps filed therewith suggests no intent on the part of the incorporators to "convey" to themselves territory including the center line of Franklin Pike.

Since this Court finds that the citizens of Oak Hill did not intend to draw the city's boundaries over the center line of Franklin Road, we therefore must determine where the line is to be drawn in light of the attendant circumstances, exercising our review in light of the presumption of correctness of factual findings on appeal. The court found as a fact that maps filed contemporaneous with the petition for election indicated the omission of parcel 109 from the city boundaries. The trial court also found as a fact that at the time of Oak Hill's incorporation, parcel 109 was owned by the state highway department. The court heard testimony from three experts concerning the meaning of the word "margin" as it is used in the petition. The court heard evidence as to what the "right-of-way" for Franklin Road entailed at the location of parcel 109 and, the evidence heard below does not preponderate against the trial court's findings.

Appellant argues that the incorporators of Oak Hill could indeed include a state right-of-way within the city boundaries, and thus takes issue with the trial court's holding to the contrary. However, this Court's decision hinges upon whether the incorporators of Oak Hill *intended* to include parcel 109 within the city boundaries. Since we hold they did not so intend, the question of whether they could is not necessary to the decision.

Likewise, the Court's application of Tennessee Code Annotated section 6-51-302 is not necessary to the determination of the intent of the city incorporators at the time of Oak Hill's incorporation. As for the expansion or contraction of boundaries, our holding that Oak Hill's original boundaries excluded parcel 109 necessitates a holding that any later maps drawn to include parcel 109 within Oak Hill were, by definition, an attempt to expand those boundaries in violation of the Metropolitan Charter section 18.15. Inasmuch as section 18.15 prohibits such expansion, parcel 109 cannot be included within the City of Oak Hill. As such, the 1988 reissue of the city zoning and street maps to include parcel 109 are ineffective in their purpose.

In the final analysis, we are seeking the intention of the City of Oak Hill at the time of its incorporation as to whether or not parcel 109 was included within its corporate limits. Contemporaneous documents filed, at or near the time of the original charter of incorporation, included a zoning plan map and a major street plan, both of which clearly indicated that parcel 109 was not within the corporate limits. Nothing has happened since the charter of incorporation that could suffice to expand the corporate limits of Oak Hill. To the extent that parol evidence is admitted as to the meaning of the terms "margin" and "right-of-way," the trial court accepted the factual evidence offered by the appellees. The evidence does not preponderate against the factual findings of the chancellor.

The finding of the trial court that parcel 109 is outside the limits of Oak Hill and therefore not subject to Oak Hill's restrictive zoning is affirmed and the cause is remanded for further proceedings as necessary in the trial court.

 

 

_____

WILLIAM B. CAIN, JUDGE